Larry ·Walter DENTIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–511.

Court of Criminal Appeals of Oklahoma.

April 19, 1978.

Thomas W. Burns, Deputy Chief Public Defender, and Frank H. McCarthy, Legal Intern, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Charles S. Rogers, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Larry Walter Dentis, hereinafter referred to as the defendant was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–76–3058 and CRF–76–2995, for the offenses of Burglary in the Second Degree, and Attempted Burglary in the Second Degree, in violation of 21 O.S.1971, § 1435 and 21 O.S.1971, § 42, respectively. He was sentenced to five (5) years' imprisonment in Case No. CRF–76–3058 and two (2) years in Case No. CRF–76–2995, the sentences to run concurrently. From said judgments and sentences an appeal has been perfected to this Court.

At the non-jury trials, which were consolidated, the parties stipulated that the testimony given at the preliminary hearing in Case No. CRF–76–3058 could be introduced into evidence by means of the transcript. Bill Joe McKay testified that he operated a service station at 3344 East 31st Street in Tulsa County. On November 6, 1976, he secured the station at approximately 7:30 p. m. He returned the following morning and discovered that the front plate glass door had been knocked out. The vending machine had been busted open and the cash register was missing. A plastic bucket which he used to keep change in, was missing.

Officer Harold Adair testified that on November 6, 1976, shortly after midnight, he was patroling in the vicinity of 4904 South Union. He observed a person, whom he identified in court as the defendant, walk away from a closed laundromat toward an automobile. He recognized the defendant and his automobile as he had been arrested at the scene of a burglary about two weeks earlier in the same vehicle. The defendant placed something in the trunk of the vehicle. He stopped the vehicle and requested that the defendant and the passengers dismount. They were asked to place their hands on the top of the vehicle. He stayed with them while his partner checked the laundromat. He checked the building after his partner returned and found recent pry marks on the door. He placed the defendant under arrest and advised him of his constitutional rights. The driver's side of the vehicle had been left open when the defendant got out. The officer observed a plastic bucket on the rear floorboard, containing change and a metal tab with the name, Bill McKay on it.

Investigator John Canfield testified that he had a conversation with the defendant on Sunday after his arrest. He did not advise the defendant of his *Miranda* rights because the arrest report reflected that they had been previously given. The defendant stated that the plastic bucket had been taken from a DX station near 31st and Harvard.

The parties further stipulated that if Garland Lamm were called to testify that he would testify that he is the owner of the laundromat at 4904 South Union; and that he left the laundromat on November 6, 1976, at approximately 10:30 p. m. There were no pry marks on the doors when he left the premises.

■ The defendant asserts in his first assignment of error that the trial court erred in failing to suppress the evidence obtained as a result of an illegal arrest. We are of the opinion that this assignment of error is wholly without merit. The evidence established that the officer observed the defendant walking away from a closed laundromat shortly after midnight and put something into the trunk of his vehicle. The officer recognized the defendant and the vehicle as he had been previously arrested at the scene of a burglary about two weeks prior thereto. The officer asked the defendant and his passengers to get out of the car while his partner checked the building. He observed the green bucket in plain view when the defendant dismounted from the car. The defendant was not placed under arrest until the officer observed recent pry marks on the door of the laundromat. In *Prock v. State,* Okl.Cr., 542 P.2d 522 (1975) we stated:

"... Under appropriate circumstances police officers in the course of their duty, *may approach and question* suspicious individuals in order to determine their identity or to maintain status quo momentarily while obtaining more information, even though there are insufficient grounds for arrest. See *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *United States v. Saldana,* 453 F.2d 352 (10th Cir. 1972), and cases cited therein."

See also, *Hutchinson v. State,* Okl.Cr., 562 P.2d 867 (1977); and *Lloyd v. State,* Okl.Cr., 505 P.2d 1364 (1973). We thus conclude that the officer's action in detaining the defendant was not only proper but that he would have been derelict in his duty by failing to do so. The detention of the defendant would clearly fall within the rule set down by the United States Supreme Court in *Adams v. Williams,* supra, wherein it stated:

"... The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. To the contrary, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) recognizes that it may be in the essence of good police work to adopt an intermediate response. ..." [Citations added]

■ Defendant urges in the final assignment of error that the trial court erred in

failing to acquit him in the attempted burglary in the second degree case as the State failed to prove him guilty beyond a reasonable doubt. We need only observe that although the evidence of the defendant's guilt was circumstantial, that it was clearly sufficient for the finder of facts to conclude that the defendant was guilty as charged. We have consistently held that under such circumstances this Court will not interfere with such findings. See *Bellows v. State,* Okl.Cr., 545 P.2d 1303 (1976).

The judgments and sentences are accordingly *AFFIRMED.*

CORNISH and BRETT, JJ., concur.